29621. CHERRY *v.* McCUTCHEN.

DECIDED DECEMBER 4, 1942. REHEARING DENIED DECEMBER 18, 1942.

684

*A. S. Grove,* for plaintiff in error.   *Paul S. Etheridge Jr.,* contra.

STEPHENS, P. J.   (After stating the foregoing facts.)

1.  It appears from the record that the present action was brought against "Cherry Transfer & Storage Company," and that

the return of service recites that the petition and process were served by the deputy marshal on "the defendant. Cherry Transfer & Storage Company, a corporation," by leaving a copy with the agent in charge of the office and place of business of the corporation. The record further shows an answer filed by "the defendant" who is designated in the caption as "Cherry Transfer & Storage Company." In the body of the answer the defendant is referred to by the use of the word "defendant" and the pronouns "he" and "his." The affidavit verifying the answer is made by J. M. Cherry, and recites that "he is the owner and operator of Cherry Transfer & Storage Company and that the facts set forth" are true. The record further discloses that in 1919 a corporation under the name of Cherry Transfer & Storage Company was created for twenty years and that the charter expired at the end of that period. The defendant testified that when the subject-matter of the suit was stored by the plaintiff it was stored with a corporation which was then in existence; that when the charter expired he, the defendant, continued in the storage business under the name of the corporation; and that when the action in trover was instituted the corporation had expired and the business was being operated by him as Cherry Transfer & Storage Company. The defendant, in addition to denying the allegations of the petition, by way of cross-action sought a judgment against the plaintiff for $27.10 as storage due by the plaintiff to the defendant.

The defendant insists that the judgment in the present suit is void for the reason that it was rendered against J. M. Cherry trading as Cherry Transfer & Storage Company; that the suit is against a corporation by the name of Cherry Transfer & Storage Company, and service was made on the corporation, and not on J. M. Cherry doing business as Cherry Transfer & Storage Company. The defendant attacked the judgment by motion in arrest, and also in the motion for new trial on this ground.

A judgment rendered without service of process is void for want of jurisdiction over the defendant. Code, § 110-709; *Parker* v. *Jennings,* 26 *Ga.* 140. However, where the court had jurisdiction of the subject-matter "Appearance and pleading shall be a waiver of all irregularities of the process, or of the absence of process, and the service thereof." Code, § 81-209. "Even before the adoption of the Code, appearance and pleading to the merits waived service."

*Blalock* v. *Tidwell,* 56 *Ga.* 517. A general appearance by the defendant in an action in a court having jurisdiction of the subject-matter amounts to a waiver of the issuance of, or defects in, the process served, and confers jurisdiction of his person regardless of the fact that process was not served on him or that the service may have been defective. A defendant who appears and pleads to the merits of the action without previous objection to the process, and without also objecting to the lack of jurisdiction of the court over his person, waives any objection which he may have had to the issuance of the process, defects in the process, or the service, and even any objection based on the ground of total want of service. Fitzgerald &c. Co. *v.* Fitzgerald, 137 U. S. 98 (11 Sup. Ct. 36, 34 L. ed. 608); *Citizens National Bank* v. *Swift Fertilizer Works,* 16 *Ga. App.* 533 (86 S. E. 403), and cit.; 72 A. L. R. 126.

Conceding that the original suit was against Cherry Transfer & Storage Company as a corporation, the suit was filed May 24, 1940, after the charter had expired, and it was defended by J. M. Cherry, doing business under the name of Cherry Transfer & Storage Company, and in the answer the defendant by way of cross-action sought a money judgment against the plaintiff. The case was tried and the defendant introduced evidence in support of his answer and cross-action. The trial resulted in a judgment for the plaintiff, allowing the defendant credit for the amount claimed in the cross-action. The motion for new trial was overruled and that judgment was reversed by this court. There was no plea of nul tiel corporation. No attack was made on the first judgment for lack of service or irregularity thereof. No special plea was filed alleging any want of service. It was not until after the rendition of the second judgment that the defendant claimed that no judgment could be rendered against him individually or as doing business as Cherry Transfer & Storage Company because the original suit was against a corporation and service of the petition and process was made on the corporation. "Application to set aside irregularities in judicial proceedings should be made as early as possible, or as it is commonly said, in the first instance; and if the party overlook it and take subsequent steps in the cause, he can not afterwards revert back and object to it." *Beall* v. *Blake,* 13 *Ga.* 217 (58 Am. D. 513).

Applying the above principles it is the opinion of this court that

the defendant, J. M. Cherry, doing business as Cherry Transfer & Storage Company, subjected himself to the jurisdiction of the court, and any lack of service of process or irregularities in the process have been waived by him, and that the judgment rendered is not void on the ground alleged in the motion in arrest of judgment, and in ground 7 of the motion for new trial.

The fact that after the passage of the act of 1938 (Ga. L. Ex. Sess. 1937-38, pp. 214, 242, Code, Ann., § 22-1874), providing that on the expiration of a corporate charter such corporation shall "nevertheless be continued for the term of three years and until final disposition of all suits begun within that time . . for the purpose of prosecuting and defending suits by or against them and enabling them gradually to settle and close their business, to dispose of and convey their property and to divide their assets, but not for the purpose of continuing the business for which the said corporation shall have been established" the charter of Cherry Transfer & Storage Company expired by its own limitation does not alter the ruling here made. That statute has no application to the present case.

2. There is no merit in the contention that the judgment was contrary to the law and the evidence because it did not appear that there was any conversion by the defendant of the property involved. The evidence showed that on the expiration of the charter of the corporation the defendant continued the storage business under the same name; that the property involved was stored with the corporation, and that when the plaintiff demanded the picture the defendant failed and refused to deliver it to him.

3. The judge did not err in refusing to commit the case to a jury where it appeared that neither party had demanded a jury trial in accordance with the provisions of the act creating the municipal court, which provides that a plaintiff desiring a trial by jury must make written demand therefor on filing his petition, that if the defendant, where a plaintiff does not make a demand, desires a jury trial he must make such demand in writing at the time he appears and pleads, and that if no such demand for a jury trial is made the parties will be deemed to have waived such trial. See *Owen v. Stevenson,* 18 *Ga. App.* 391 (89 S. E. 435); *Lamar v. Bankers Health & Life Insurance Co.,* 32 *Ga. App.* 528 (123 S. E. 919).

Judge Stephens is of the opinion that since the right of trial by jury is a constitutional right, available to either litigant, it can not be taken away except by consent. The provisions in Ga. L. 1913 p. 145, supra, with reference to an implied waiver of a jury trial unless one side demands a jury, in the opinion of Judge Stephens, apply only to a first trial. These provisions of the statute do not expressly apply to any trial subsequent to the first trial. The defendant here, at the second trial, in Judge Stephens' opinion was not by implication to be deemed to have forfeited a right to a trial by jury.

4. In ground 9 error is assigned on certain testimony of the plaintiff. The plaintiff was asked as to what conversation was had with defendant's employees with reference to the picture, and what had been the condition of the picture at the time it was stored. He answered that when three or four of the defendant's employees came to plaintiff's home to take the picture to the storage place of the defendant the plaintiff's wife said to these employees that she did not believe she would store the picture but would keep it in the home in Dallas where she and the plaintiff were going to live. Immediately after this question the plaintiff was asked on direct examination: "Did she or not at that time say anything about the value of the picture?" In answer the plaintiff replied that his wife "said she considered it of great value." The defendant objected to the witness testifying about what the wife said, particularly as to the value of the picture, and what she considered it was worth, because such testimony was "irrelevant, incompetent, and immaterial."

Under the decision of this court when the case was formerly here this court laid down as the measure of damages the actual value of the picture to the owner. Thus the law of this case was stated. The plaintiff and not his wife was the owner of the picture. Neither the value of the picture to the plaintiff's wife nor the fact that the wife considered the picture of "great value" was relevant to show the actual value of the picture to the owner who was the plaintiff. Such testimony was purely hearsay and was incompetent and irrelevant. The statement by the wife that the picture was of great value was not made in the defendant's presence. The court erred in admitting the testimony of the plaintiff relatively to the statement of his wife, not made in the defendant's presence, that she "considered [the picture] of great value."

5. The court did not err as contended in ground 10 in permitting the plaintiff to testify that he had investigated whether he could replace the frame to the picture and that his investigation did not lead him to any place where the frame could be duplicated.

6. The court did not err in permitting the plaintiff, for the purpose of showing the value of the picture, to testify what he planned to do with it in connection with the house he was building at the time he discovered the picture was missing, and did not err in permitting the plaintiff to testify that, before he found that the picture was missing, he had had plans drawn for the house and the living room and mantel and fireplace were shaped for the picture; that he had had that side of the living room paneled, and had the mantel planned so as to take care of the picture; that his wife had bought draperies and slip covers for the furniture based on the colors in the picture; that the color scheme of everything was carried out around the picture, and that the picture was to hang over the mantel. The court did not err in permitting the plaintiff to testify that, based on the intended use of the picture and based on no sentiment whatsoever, the value of the picture to him, its owner, was $2500. This testimony was in line with the law of the case as laid down by the court as to what the proper measure of damages was, namely, the actual value of the picture to the owner, and anything properly going to show the actual value to the owner was admissible. Certainly the owner could testify to facts which constituted the actual value of the picture to him. It was proper for the owner, after so testifying, to state that the actual value of the picture "based on no sentiment whatsoever" was to him $2500. The opinion of experts in oil paintings would not necessarily be the only manner in which the actual value to the plaintiff of this painting could be proved.

7. It follows that no error is shown in grounds 11 to 14 inclusive, all of which deal with testimony as to the building by the plaintiff of his home with reference to the lost picture.

8. "The superior courts may grant new trials in all cases when any material evidence may be illegally admitted to . . the jury against the demand of the applicant." Code, § 70-203. While the admission of immaterial evidence without harmful effect is not a good ground for new trial, yet where material and illegal evidence

is improperly admitted a new trial will be granted. *Howell* v. *Howell,* 47 *Ga.* 492. The error in admitting the evidence complained of in ground 9 demands the grant of a new trial.

*Judgment reversed. Sutton and Felton, JJ., concur. Stephens, P. J., dissents in part.*